UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------x
WILLIAM KING MOSS, III,

                     Plaintiff,           <u>MEMORANDUM & ORDER</u>
                                             22-CV-6212(JS)(SIL)

    -against-

BOARD OF EDUCATION OF THE SACHEM
CENTRAL SCHOOL DISTRICT; SACHEM CENTRAL
SCHOOL DISTRICT; AND INDIVIDUALLY AND
IN THEIR OFFICIAL CAPACITIES: ALEX
PICCIRILLO, ROBERT SCAVO, MATTHEW
BAUMANN, MICHAEL J. ISERNIA, JAMES
KIERNAN, SABRINA PITKEWICZ, SARA
WOTTAWA,VINCENT REYNOLDS, LAURA SLATTERY,
WILLIAM (BILL) COGGIN, MEREDITH VOLPE,
JAMES MANCARUSO, CHRISTOPHER PELLETIERI,
KRISTIN CAPEL-EDEN, ERIN HYNES, PATTI
TROMBETTA, JOHN O'KEEFE, DANIELLE
DELORENZO, MATT PERLONGO, MELISSA PURGA,
LORI ONESTO, KATIE NICOSIA, JOSEPH
BORRUSO, CAROLYN KMIOTEK, CAROL KARSON,
ANDREW LARSON, AND JOSEPH WATSON,

                    Defendants.
--------------------------------x
For Plaintiff:    William King Moss, III, <u>pro se</u>
                 32 South 5th Avenue
                 Brentwood, New York 11717

For Defendants:   Carolyn Beth Lineen, Esq.
                 Valentina Lumaj, Esq.
                 Silverman & Associates
                 445 Hamilton Avenue, Suite 1102
                 White Plains, New York 10601

SEYBERT, District Judge:

        <u>Pro se</u> plaintiff William King Moss III, ("Mr. Moss," or

"Plaintiff") commenced this action against defendants Board of

Education of the Sachem Central School District ("Board of Ed.");

Sachem Central School District (the "District"); former and

current Board of Ed. Trustees, including: Alex Piccirillo, Robert Scavo, Matthew Baumann, Michael J. Isernia, James Kiernan, Sabrina Pitkewicz, Sara Wottawa, Vincent Reynolds, Laura Slattery, William (Bill) Coggin, Meredith Volpe, and James Mancaruso; various Superintendents, including: Superintendent Christopher Pelletieri ("Pelletieri"), Assistant Superintendent of Personnel Kristin Capel-Eden ("Capel-Eden"), Assistant Superintendent of Curriculum and Instruction Erin Hynes ("Hynes"), Assistant Superintendent for Student Support and Administration Patti Trombetta ("Trombetta"), and Interim Superintendent John O'Keefe ("O'Keefe"); District employees Danielle Delorenzo, Matt Perlongo, Lori Onesto, Katie Nicosia, Joseph Borruso, Carolyn Kmiotek, and Carol Karson; District volunteer Melissa Purga; former Hiawatha Elementary School Principal Andrew Larson ("Mr. Larson"); and, newly appointed Hiawatha Elementary School Principal Joseph Watson ("Mr. Watson") (collectively the "Defendants").

Plaintiff's Second Amended Complaint ("SAC") purports to allege discrimination claims based on Plaintiff's race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), and 42 U.S.C. § 1983 ("Section 1983"); as well as a conspiracy claim pursuant to Section 1983. (SAC, ECF No. 15.)   In addition to damages, Plaintiff seeks declaratory and injunctive relief.

2

Currently pending before the Court is Defendants' motion to dismiss Plaintiff's SAC (hereafter, the "Dismissal Motion"). (See ECF No. 30; see also Support Memo, ECF No. 33; Reply, ECF No. 35.[1])  Plaintiff opposes said Motion (hereafter, the "Opposition"). (See Opp'n, ECF No. 25; see also Opp'n Aff., ECF No. 23; Sur-Reply, ECF No. 40.[2])  After careful consideration, for the reasons stated herein, Defendants' Dismissal Motion is GRANTED.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.]

---

[1]  Page citations to Defendants' submissions are those generated by the Court's Electronic Case Filing ("ECF") system.

[2]  Page citations to Plaintiff's submissions are those generated by the ECF system.

BACKGROUND

I.   Factual Background[3]

Plaintiff, a black African American male and resident of Brentwood, New York, worked as a middle school and high school math teacher at Brentwood Union Free School District from September 2000 through August 2011 before leaving to work at the Lawrence Union Free School District where he was Director of Academic Affairs.  (SAC ¶ 12; Pl.'s Resume, Ex. B, ECF No. 15-1, at 29 (hereafter, the "Resume").)

Plaintiff taught fifth and sixth grade math for two years at the Lawrence Middle School.  (SAC ¶ 451.)  Plaintiff also had

---

[3]  The following facts are taken from the SAC and, for purposes of considering Defendants' Dismissal Motion, are accepted as true. See Williams v. Richardson, 425 F. Supp. 3d 190, 200 (S.D.N.Y. 2019).   Notwithstanding, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011).  Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the pleadings themselves," because "[t]o go beyond the allegations in the [c]omplaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to [Rule] 56." Thomas v. Westchester County Health Care Corp., 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002). "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the [c]omplaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment." Id.; see also Hu v. City of N.Y., 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'" (quoting Saimels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993); alteration omitted)).   Herein, Plaintiff's exhibits are denoted by letters and Defendants' exhibits are denoted by numbers.  (See, e.g., Support Memo at n.3.)

two years' experience supervising fifth and sixth grade teachers and nine years' experience supervising fifth and sixth grade students. (Id. ¶¶ 144-45, 452.) Additionally, Plaintiff served as assistant director and director of two summer camp programs. (Resume at 29.) Plaintiff has several certifications: an elementary teaching certification in Mathematics; a school district administrator certificate; and, a school administrator supervisor certificate. (SAC ¶¶ 146-47.) Plaintiff has not worked in an elementary school or a central administration building or office. (Id. ¶ 464.)

On August 7, 2020, on the Online Application System ("OLAS"), the District posted an available position for a K-8 Principal (hereafter, the "Principal Position") at the Hiawatha Elementary School ("Hiawatha") within the District (hereafter, the "Job Posting"). (Id. ¶ 85; see also Job Posting, Ex. E, ECF No. 15-1, at 42-43.) The Job Posting indicated, inter alia, a valid New York State certification as a school building leader or school district administrator was required and administrative experience was preferred. (SAC ¶ 87; see also Job Posting.)

The District utilized Board Policy Code No. 9240 and "Interviewing Procedures for SAA[4] Administrators" (hereafter, the "Interview Procedures") in its hiring for the Principal

---

[4] "SAA" is an acronym for the Sachem Administrators Association. (SAC ¶ 604.)

Position at Hiawatha.   (SAC ¶¶ 116-17; Defs.' Answer & Resp. to
Pl.'s N.Y.S. Div. of Human Rights Complaint, Ex. D,[5] ECF No. 15-2,
at 11, 15-18.)   The Interview Procedures, adopted on December 13,
2017, allow an SAA member to recommend a candidate for an open
position in the District by emailing the Assistant Superintendent
for Personnel, as well as having the candidate apply on OLAS.  (SAC
¶ 345; NYSDHR Response at 15.)

The same day the Principal Position was posted, Mr.
Larson -- who was the immediately preceding Principal of Hiawatha,
the then-current District High School Principal, and an SAA member
-- sent an email to Superintendents Capel-Eden and Hynes
recommending Mr. Watson for the Principal Position and requesting
Mr. Watson be given a screener interview.   (SAC ¶¶ 61, 68, 90
(citing NYSDHR Response).)  At the time, Mr. Watson, a white male,
was employed as an Assistant Principal of Bellport Middle School
in the South Country School District.  (Id. ¶ 114; NYSDHR Response
at 24-25.)   The District received approximately 90 applications
for the Hiawatha Principal Position, including those of Mr. Watson
and Plaintiff. (Id. ¶¶ 96, 106.)

According to Defendants' NYSDHR Response, Plaintiff was
not selected for a first-round screening interview because he
lacked experience as an Assistant Principal or Principal.   (Id.

---

[5]  Hereafter, Plaintiff's Exhibit D shall be referred to and cited
as the "NYSDHR Response".

¶ 445 (citing NYSDHR Response).)  Plaintiff had never: supervised an elementary-level school building; held a building-level administrative position; and, never taught at the elementary-level. (Id. ¶¶ 442-44 (citing NYSDHR Response).)  On August 24, 2021, seven applicants, including Mr. Watson, were scheduled for first-round screening interviews for the Hiawatha Principal Position; all the selected candidates, none of whom were African American,[6] had prior experience as Assistant Principals. (Id. ¶¶ 110-15, 412-18; NYSDHR Response at 5; Opp'n at 10.) Plaintiff alleged that since he (1) indicated his race on his OLAS application for the Hiawatha Principal Position, (2) as well as submitted his Resume with his application, which listed his role in the National Association for the Advancement of Colored People ("NAACP"), Defendants had documentary knowledge of his race. (Id. ¶¶ 461-63.)

For the first-round interviews, the interviewing committee consisted of Superintendents Capel-Eden, O'Keefe, Hynes, Trombetta, and SAA members Danielle DeLorenzo and Matt Perlongo. (Id. ¶ 119 (citing NYSDHR Response at 5.))  Four of the seven interviewees were selected for second-round interviews, which were conducted by the same interview committee members as for the first-round, with the addition of Melissa Purga (a community

---

[6]   One first-round interviewee was Asian, with the remaining first-round interviewees being white.  (SAC ¶¶ 111-15.)

member), Lori Onesto (the Principal's Aide teacher), Kate Nicosia (school nurse), Joseph Borrusso (head custodian), Carolyn Kmiotek (clerical staff member), and Carol Karson (teacher).  (Id. ¶ 121 (citing NYSDHR Response at 6.))

Mr. Watson and Jacqueline Beckmann ("Ms. Beckmann") were the only applicants selected for third-round interviews.  (Id. ¶ 122.)  At the time she applied for the Hiawatha Principal Position, Ms. Beckmann was the Assistant Principal at Lawrence Elementary School; she had previously taught first and fourth grades. (NYSDHR Response at 28-29.)  The interview committee for the third-round interviews consisted of Superintendents Pelletieri, Capel-Eden, O'Keefe, Hynes, and Trombetta.  (SAC ¶ 123.)

After three rounds of interviews, on or about September 30, 2020, the Board of Ed. approved the recommendation of the District Superintendent to appoint Mr. Watson as Hiawatha Principal.  (Id. ¶ 131; NYSDHR Response at 6.)  Though the District recognized "Ms. Beckmann had more elementary school experience than Mr. Watson, the interview committee determined that Mr. Watson had more experience in a school district that was similar to the District and the specific school, Hiawatha, and that he had demonstrated the qualities that Hiawatha needed in a Principal, including, but not limited to leadership and flexibility."  (SAC

¶ 124 (quoting NYSDHR Response at 6).)   On October 1, 2020, Mr. Watson assumed the Hiawatha Principal Position.  (Id. ¶ 130.)

Plaintiff was never notified whether his application was considered; rather, in June 2021, he learned the Principal Position had been filled by Mr. Watson.  (Id. ¶ 102-03.)

## II.   Procedural Background

### A.   The State Court Litigations

On July 10, 2021, Plaintiff filed a complaint with the NYSDHR alleging race discrimination in the hiring process for the Hiawatha Principal Position, which was dually filed with the Equal Employment Opportunity Commission ("EEOC").  (Id. ¶ 104.)   On August 19, 2021, the District submitted its NYSDHR Response.  (Id. ¶ 105.)  Upon Plaintiff's request, on January 31, 2022, the NYSDHR dismissed Plaintiff's complaint for administrative convenience. (Opp'n. at 12.)

On February 1, 2022, in the Supreme Court of the State of New York, Suffolk County ("Suffolk Supreme Court"), Plaintiff commenced an action against the same Defendants as here asserting claims of race discrimination in violation of the New York State Constitution, New York State Human Rights Law, Suffolk County Human Rights Law, New York State Civil Rights Law, New York Civil Service Law, and claims for breach of contract and negligence arising out of the alleged failure to hire him for the Principal Position. (See Moss III v. Bd. of Educ. of Sachem Centr. Sch. Dist., Ind.

No. 602037/2022 (hereafter, "State Litigation 1"), Complaint
(Suffolk Sup. Ct. 2022), Ex. 2, ECF No. 32-2 at 1-94, <u>attached to</u>
Lineen Decl., ECF No. 32; <u>see also</u> State Litigation 1, Docket
Sheet, Ex. 2, ECF No. 13-2, at 95-100, <u>attached to</u> Lineen Decl.)
On January 10, 2023, the Suffolk Supreme Court granted the
Defendants' motion to dismiss State Litigation 1.  (<u>See</u> State
Litigation 1, Docket Sheet, at No. 79.[7])

On January 31, 2023, Plaintiff filed a second action in
Suffolk Supreme Court against Defendants.  (<u>See</u> <u>Moss III v. Bd. of
Educ. of the Sachem Centr. Sch. Dist.</u>, Ind. No. 602607/2023 ("State
Litigation 2"), Complaint (Suffolk Sup. Ct. 2023), Ex. 3, ECF No.
32-3, at 2-167, <u>attached to</u> Lineen Decl.; <u>see also</u> State Litigation
2, Docket Sheet, Ex. 3, ECF No. 32-3, at 168-73, <u>attached to</u> Lineen
Decl.)  Plaintiff alleged many of the same claims he had asserted
in State Litigation 1 related to alleged race discrimination in
the hiring of the Hiawatha Principal Position, and sought the same
injunctive and declaratory relief, and damages.  (<u>Id.</u>)

On February 8, 2023, in State Litigation 1, Plaintiff
filed a notice of appeal of the Suffolk Supreme Court's January
10, 2023 decision and order dismissing that action.  (<u>See</u> State

---

[7]  The Court has taken judicial notice of the public Docket Sheet
in State Litigation 1.  <u>See</u> State Litigation 1 Docket Sheet,
available                                                        at
<u>https://iapps.courts.state.ny.us/nyscef/DocumentList?docketId=eL
97j6TKpfgs8hnrAOkxig==&PageNum=2&narrow=</u>(last visited June 25,
2024).

Litigation 1, Docket No. 82.)  He simultaneously filed a motion to renew and reargue the motion to dismiss in State Litigation 1 and to consolidate State Litigation 1 with State Litigation 2.  (Id., Docket No. 83.)  On June 8, 2023, the Suffolk Supreme Court denied Plaintiff's motion to reargue Defendants' motion to dismiss.[8] (Id., Docket No. 103.)

On March 14, 2024, pursuant to C.P.L.R. § 3211(a)(4), the Suffolk Supreme Court granted Defendants' motion to dismiss Plaintiff's State Litigation 2 finding "no appreciable difference" between State Litigation 2 and State Litigation 1.  (See State Litigation 2, Docket No. 133.[9])  On April 13, 2024, Plaintiff filed a notice of appeal and a motion to reargue in State Litigation 2.[10] (Id., Docket Nos. 135, 136.)

B.  The Instant Federal Litigation

While pursuing his race discrimination claims in Suffolk Supreme Court, on July 18, 2022, the EEOC issued Plaintiff a

---

[8]  As of the date of this Memorandum and Order, Plaintiff's appeal of State Litigation 1 remains pending.

[9]  The Court has taken judicial notice of the public Docket Sheet in State Litigation 2.  See State Litigation 2 Docket Sheet, available at https://iapps.courts.state.ny.us/nyscef/DocumentList?docketId=kj RY6ROnT4J0I15nQdb_PLUS_EQ==&PageNum=2&narrow= (last visited June 25, 2024).

[10]  As of the date of this Memorandum and Order, both Plaintiff's notice of appeal and motion to reargue in State Litigation 2 remain pending.

dismissal and right-to-sue letter; thereafter, on October 14, 2022, Plaintiff commenced the instant litigation by filing his initial Complaint alleging race discrimination against the same Defendants and arising out of the same alleged facts underlying State Litigation 1. (Compl., ECF No. 1, ¶ 8.) On January 4, 2023, Plaintiff filed an Amended Complaint ("FAC") herein. (FAC, ECF No. 12.) Then, on February 17, 2023, he filed the operative SAC; Plaintiff claims race discrimination and conspiracy in the hiring of the Hiawatha Principal in violation of Title VII, Section 1981, Section 1983 and Section 1985. He seeks lost wages and benefits, compensatory damages for alleged physical and emotional injuries, declaratory and injunctive relief, as well as punitive damages, attorneys' fees and costs. (SAC ¶¶ 4, 69.)

On June 27, 2023, Defendants served their Dismissal Motion in accordance with the Court's briefing schedule. On August 8, 2023, Plaintiff filed his Opposition. In accordance with the Court's September 7, 2023 Order, on September 8, 2023, Defendants filed both their Dismissal Motion and served and filed their Reply. On October 6, 2023, with the Court's permission, Plaintiff filed his Sur-Reply to Defendants' Reply.[11]

---

[11]  To the extent Plaintiff argues the filing and service of Defendants' Dismissal Motion papers were improper (see Opp'n. at 20-51), the Court finds said argument to be without merit. While the record reflects some confusion on the part of Defendants regarding whether a "bundle" rule applied to their service and filing of motion papers (see ECF No. 27), it also shows Plaintiff

DISCUSSION

I.   <u>Legal Standard</u>

Rule 12(b)(6) provides that dismissal is appropriate if the complaint fails "to state a claim upon which relief can be granted." F<span>ED</span>. R. C<span>IV</span>. P. 12(b)(6).  In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007)); <u>accord</u> <u>Harris v. Mills</u>, 572 F.3d 66, 71–72 (2d Cir. 2009).  First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678; <u>accord</u> <u>Harris</u>, 572 F.3d at 72.  Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss.  <u>Iqbal</u>, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific

---

was adequately accommodated and not prejudiced by said confusion. (<u>See, e.g.</u>, <u>id.</u>)  Indeed, Plaintiff has been afforded every opportunity to fully oppose the Dismissal Motion, including being granted permission to file a Sur-Reply.  (<u>See</u> Sept. 18, 2023 Elec. Order; Sur-Reply, ECF No. 40.)  Moreover, notwithstanding Plaintiff's <u>pro se</u> status, it is well-established that the Court has "inherent powers" to "manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." <u>Dietz v. Bouldin</u>, 579 U.S. 40, 45 (2026).  In the Court's discretion, said inherent power has been judiciously employed here.

task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint," Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998), but this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002) (observing a document is "integral" if the complaint "relies heavily upon its terms and effect").

A complaint filed by a pro se litigant is to be construed liberally and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Nevertheless, a pro se complaint must state a plausible claim for relief and comply with the minimal pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure. See Hiller v. Farmington Police Dep't, No. 12-CV-1139, 2015 WL 4619624, at *7 (D. Conn. July 31, 2015).

II. Consideration of Dismissal of the SAC Pursuant to Rule 8

Defendants seek dismissal of Plaintiff's SAC for failure to comply with Rule 8, which requires a complaint contain "a short

and plain statement of the claim." FED. R. CIV. P. 8(a)(2). Defendants contend Plaintiff's SAC -- containing 134 pages, 794 paragraphs of allegations, and 373 pages of exhibits -- violates Rule 8. (Support Memo at 12-13.) True, but the Court declines to dismiss the SAC on this basis.

Rule 8 requires a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This Rule's purpose "is to provide an adverse party with notice of the claims asserted and to limit the burden imposed on both courts and litigants by unnecessarily verbose and incoherent pleadings." Barreto v. Suffolk County, No. 10-CV-0028, 2010 WL 301949, at *3-4 (E.D.N.Y. Jan. 20, 2010) (citing Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988)). Further, Rule 8(d)(1) requires that each allegation be "simple, concise, and direct." FED R. CIV. P. 8(d)(1). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S at 545. "[P]rolix, unintelligible, speculative complaints that are argumentative, disjointed and needlessly ramble have routinely been dismissed in this Circuit." Ceparano v. Suffolk County, No. 10-CV-2030, 2010 WL 5437212, at *3 (S.D.N.Y. Dec. 15, 2010) (citing Jones v. National Commc'ns & Surveillance Networks, 266 F. App'x 31, 32 (2d Cir. 2008) (affirming dismissal of pro se litigant's complaint for failing to comply with Rule 8's requirement of providing "short

and plain statement of the claim[s]" where 58-page, single-spaced compliant, with 87 additional pages of attachments, alleged more than 20 separate causes of action against more than 40 defendants)). "When a complaint fails to comply with [the Rule 8] requirements, the district court has the power, on motion or <u>sua sponte</u>, to dismiss the complaint or to strike such parts as are redundant or immaterial[.]" <u>Celli v. Cole</u>, 699 F. App'x 88, 89 (2d Cir. 2017) (summary order) (internal quotation marks and citation omitted).

The Court agrees the SAC is unnecessarily lengthy and redundant, containing 794 paragraphs of purported allegations replete with conclusory statement masquerading as alleged facts, as well as numerous, often irrelevant, exhibits, including articles and social media posts outside the realm of Plaintiff's legal claims. However, cognizant Plaintiff is proceeding <u>pro se</u> and that his SAC "must be held to less stringent standards than formal pleadings drafted by lawyers," <u>Erickson</u>, 551 U.S. at 94, in its discretion, the Court declines to dismiss the SAC on Rule 8 grounds.

## III. <u>Dismissal of SAC Pursuant to Rule 12(b)(6)</u>

Plaintiff asserts claims for failure to hire on the basis of race against the District and the Board of Ed. pursuant to Title VII. Additionally, he asserts discrimination claims pursuant to Section 1981 against all Defendants, and under the Fourteenth

Amendment, pursuant to Section 1983 against the District, the Board of Ed., and the individual Defendants in their official and individual capacities. Finally, Plaintiff asserts a conspiracy claim pursuant to Section 1985(3) against all Defendants.

For the reasons discussed below, Plaintiff's allegations fail to state a claim for relief under Federal Rule 12(b)(6) and are therefore dismissed.

A. <u>Plaintiff's Title VII Claims and Section 1983 Claims</u>[12]

Title VII prohibits employment discrimination based on race, color, religion, sex or national origin. <u>See</u> 42 U.S.C. § 2000e-2. Section 1983 protects against the violation of federal rights, including the right to equal protection under the Fourteenth Amendment, by persons acting under color of state law. <u>Littlejohn v. City of N.Y.</u>, 795 F.3d 297, 320 (2d Cir. 2015). To state a claim pursuant to Section 1983, Plaintiff must plausibly allege: (1) challenged conduct "committed by a person acting under color of state law"; and (2) said challenged conduct "must have deprived a person of rights, privileges or immunities secured by

---

[12]  To the extent Plaintiff brings his discrimination claims pursuant to Section 1981, said claims are untenable as it is Section 1983 that "provides the sole cause of action available against state actors alleged to have violated [Section] 1981." <u>Duplan v. City of N.Y.</u>, 888 F.3d 612, 619 (2d Cir. 2018); <u>see also</u> <u>Richardson v. Buckheit</u>, No. 19-CV-8505, 2020 WL 5802291, at *4 (S.D.N.Y. Sept. 29, 2020) (dismissing Section 1981 claims against state actors). Accordingly, the Court finds Plaintiff's Section 1981 claims are implausible; therefore, they are dismissed.

the Constitution or laws of the United States." Lansbury v. Massey, No. 22-CV-6447, 2023 WL 266513, at *2 (E.D.N.Y. Jan. 18, 2023) (quoting Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010)). Once a plaintiff establishes the "color of law" requirement, and it is undisputed that "a state employee acting in his official capacity is acting 'under color of state law,'" the Court will consider the Title VII and Section 1983 claims together. Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 82 (2d Cir. 2015) (citing Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004) (stating the elements of a Section 1983 equal protection claim "are generally the same as the elements of" a Title VII claim, "and the two must stand or fall together")). However, unlike Title VII claims, Section 1983 claims may be brought against individuals. Id. at 88; see also Feingold, 366 F.3d at 159 n.20 ("[U]nlike a Title VII claim[,] a Section 1983 claim can be brought against individuals.").

Plaintiff's claims of discriminatory failure to hire under Title VII and Section 1983 are analyzed under the McDonnell Douglas burden-shifting framework. See Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010). Accordingly: (1) a plaintiff must first establish a prima facie case of discrimination; after that, (2) the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions; if defendant does so, the McDonnell Douglas framework

and its presumptions and burdens disappear; and, thus, (3) the burden shifts back to the plaintiff to show defendant's reason is pretextual, masking defendant's true discriminatory intent. See generally Patterson v. City of Oneida, 375 F.3d 206, 221 (2d Cir. 2004).

To establish a prima facie claim of race discrimination, a plaintiff must demonstrate: "(1) he is a member of a protected class, (2) he was qualified for the job for which he applied, (3) he was denied the job, and (4) the denial occurred under circumstances that give rise to an inference of invidious discrimination." Vivenzio, 611 F.3d at 106 (citing id.). Nonetheless, to survive a motion to dismiss, a plaintiff need not allege facts in the complaint sufficient to establish a prima facie case. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002) ("In employment discrimination cases, a plaintiff is not required to establish a prima facie case at the pleadings stage."). Instead, the complaint should contain "only enough facts" to state a plausible claim that also gives fair notice to the defendant of the basis for each claim. See Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d at 210, 215 (S.D.N.Y. 2010) (holding that in "[r]econciling Swierkiewicz, Twombly, and Iqbal, a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss; however, 'the claim must be facially plausible and must give fair notice to the

19

defendants of the basis for the claim'" (quoting <u>Fowler v. Scores Holding Co.</u>, 677 F. Supp. 2d 673, 679 (S.D.N.Y. 2009))); <u>accord King v. U.S. Sec. Assocs., Inc.</u>, No. 11-CV-4457, 2012 WL 4122025, at *4 (S.D.N.Y. Aug. 22, 2012), <u>adopted by</u> 2012 WL 4327396 (S.D.N.Y. Sept. 18, 2012).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.  "For this conclusion to be drawn, a plaintiff must allege facts that allow the court in substance to infer elements of a <u>prima facie</u> case." <u>King</u>, 2012 WL 4122025, at *5 (collecting cases).

### 1. Plaintiff Does Not Allege a *Prima Facie* Case

In the instant case, Defendants do not dispute Plaintiff: is a member of a protected class; was not interviewed or hired for the Hiawatha Principal Position; or was qualified for the Principal Position.  (<u>See</u> Support Memo at 18 (presuming Plaintiff can establish the first three <u>prima facie</u> elements).)  However, they contend Plaintiff cannot meet his <u>prima facie</u> pleading burden since he has not alleged any facts allowing a fact finder to infer a discriminatory motive.  (<u>See</u> <u>id.</u>)  The Court agrees.

The Second Circuit has held a plaintiff can meet one's pleading burden through "direct evidence of intent to discriminate, . . . or by indirectly showing circumstances giving

rise to an inference of discrimination." Vega, 801 F.3d at 87. (internal citation omitted).  A plaintiff may raise an inference of discrimination either "by meeting the requirements of McDonnell Douglas and showing that the employer's stated reason for its employment action was pretext to cover-up discrimination, or by otherwise creating a 'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination." Id. (citations omitted); see Littlejohn, 795 F.3d at 311 (requiring facts "suggesting an inference of discriminatory motivation").  Here, Plaintiff's SAC unsuccessfully attempts the latter.  Specifically, Plaintiff asserts an inference of discrimination through theories of disparate treatment and disparate impact.  For the following reasons, Plaintiff's efforts fail.

a.  Disparate Treatment[13]

More favorable treatment of similarly situated employees or candidates not in a plaintiff's protected group can give rise to an inference of discrimination.  See Littlejohn, 795 F.3d at 312 ("An inference of discrimination can arise from circumstances including, but not limited to . . . the more favorable treatment

---

[13] Title VII disparate treatment claims parallel equal protection claims brought under Section 1983.  See Feingold, 366 F.3d at 138. ("The elements of one are generally the same as the elements of the other and the two must stand or fall together.").

21

of employees not in the protected group . . . ." (internal quotation marks and citation omitted)). Thus, a plaintiff must plausibly allege the existence of at least one comparator who was more favorably treated than plaintiff despite being "similarly situated to the plaintiff in all material respects." Ruiz v. County of Rockland, 609 F.3d 486, 493 (2d Cir. 2010) (internal quotation marks omitted). "At the motion to dismiss stage . . . a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011).

Plaintiff asserts an inference of race discrimination by disparate treatment is demonstrated by the fact that less qualified, non-African American applicants, who were similarly situated to Plaintiff, were interviewed for the Principal Position, while Plaintiff, a black African American, was not. (SAC ¶ 441.) He claims, inter alia: three of the selected interviewees did not possess the requisite certifications of school building leader or school district administrator; and, the District dropping these certification requirements during the application process demonstrates intentional discrimination or is a pretext for race discrimination. (Id. ¶¶ 152-55, 207, 498-509.) Plaintiff further alleges he was more qualified for the position than those

interviewed by the District because he had: more experience teaching elementary school students; more administrative experience; and, an elementary teaching certification. (Id. ¶¶ 193-202.)

As compared to Mr. Watson specifically, Plaintiff claims they are similarly situated because:

> they were both primarily secondary educators; both had two years of middle school administrative experience; both had minimal elementary school experience (. . .); both were not current or former Sachem employees; both had school district administrator supervisor certifications; both had extensive education beyond their masters' degree (. . .); both were residents of Suffolk County and both were approximately the same age.

(Id. ¶ 657.)  Yet, assuming these allegations to be true, by other allegations he makes, Plaintiff implicitly concedes he was not similarly situated to Mr. Watson or any other interviewee "in all material respects."  Ruiz, 609 F.3d 486 at 493.

Notably, unlike Mr. Watson -- and all the other interviewees -- Plaintiff did not have experience as a school building Principal or Assistant Principal.[14]  (SAC ¶¶ 445, 506-07.) Moreover, Plaintiff contends the District "incorrect[ly] assess[ed]" his school building administrative experience, as

---

[14]  Of note, "where a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss."  Lenart v. Coach Inc., 131 F. Supp. 3d 61, 67 (S.D.N.Y. 2015) (internal quotation marks omitted).

indicated on his Resume, because "his duties and that of an assistant principal are, for all intents and purposes, identical." (Id. ¶ 480.)   However, Plaintiff's belief that his experience as Director of Academic Affairs is equivalent to that of an Assistant Principal is his subjective opinion; it does not support a discrimination claim.   See Shands v. Lakeland Cent. Sch. Dist., No. 15-CV-4260, 2018 WL 3315738, at *13 (S.D.N.Y. July 5, 2018) ("Plaintiff's subjective disagreement with Defendants' assessment of her qualifications does not make their decision discriminatory.") (collecting cases), aff'd, 771 F. App'x 121 (2d Cir. 2019); Crews v. Trs. of Columbia Univ. in City of N.Y., 452 F. Supp. 2d 504, 526 (S.D.N.Y. 2006) ("Although [plaintiff] may disagree with [defendant's] determination that [another candidate] was more qualified than he, courts are not permitted to second-guess the reasonableness of the employer's criteria for employment or the merits of its selection for the position.").

Of import:  Plaintiff offers no allegations suggesting Defendants' selection of the seven candidates, and not him, had any nexus whatsoever to his race.  The assertion that Plaintiff "is Black and [the seven candidates selected for interviews] are White 'is simply insufficient as a factual pleading to allege racially motivated discrimination. . . .'"   Raymond v. City of N.Y., 317 F. Supp. 3d 746, 766 (S.D.N.Y. 2018) (quoting Johnson v. City of N.Y., 669 F. Supp. 2d 444, 450 (S.D.N.Y. 2009)).

24

Plaintiff's allegations are "missing the connective tissue that links h[is] protected status to the alleged failure to hire. [He] offers no allegations, save for h[is] own speculation . . . , that [Defendants] used that information in its hiring decisions -- much less that it was a <u>motivating factor</u> in their decision making." <u>Scalercio-Isenberg v. Morgan Stanley Servs. Grp., Inc.</u>, No. 19-CV-6034, 2019 WL 6916099, at *5 (S.D.N.Y. Dec. 19, 2019) (dismissing plaintiff's Title VII claim because her speculative allegations, <u>i.e.</u>, that her gender was used in defendant's hiring decision, were insufficient to link her protected status to defendant's alleged failure-to-hire) (emphasis in original). Indeed, it is well-established that "naked assertions of discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss." <u>Soloviev v. Goldstein</u>, 104 F. Supp. 3d 232, 249 (E.D.N.Y. 2015) (citations omitted); <u>see also</u> <u>Morales v. New York</u>, 22 F. Supp. 3d 256, 275 (S.D.N.Y. 2014) ("Plaintiff's conclusory allegations of disparate treatment and his personal opinion that such treatment was motivated by discriminatory intent are not enough to prevail on a § 1983 claim for a violation of the Equal Protection Clause.").

By way of further example, in his effort to allege intentional discrimination, Plaintiff points to a statement made

in the District's NYSDHR Response, i.e., "this Complaint is largely based on [Plaintiff's] own grand impression of himself and is riddled with obvious examples of his arrogance and his distasteful opinion that his Harvard degree entitles him to any and every position he desires."   (SAC ¶ 360 (citing NYSDHR Response).) According to Plaintiff, this statement is "racially charged [and] derogatory" thereby demonstrating "discriminatory intent."   (Id. ¶ 378.)   In light of the full context of this statement, the Court disagrees.   First, in assessing the sufficiency of a complaint's allegations, a plaintiff's "feelings and perceptions of being discriminated against are not evidence of discrimination."  Brodt v. City of N.Y., 4 F. Supp. 3d 562, 568 (S.D.N.Y. 2014) (quoting Bickerstaff v. Vassar Coll., 196 F.3d 435, 456 (2d Cir. 1999); alterations and quotation marks omitted).   Indeed, "without sufficient facts, even the most sincerely held beliefs [of discrimination] do not comprise a sufficient basis for withstanding a [Rule] 12(b)(6) attack."  Williams v. Wellness Medical Care, P.C., No. 11-CV-5566, 2013 WL 5420985, at *6 (S.D.N.Y. Sept. 27, 2013).

Second, to the extent Plaintiff's SAC contains nearly 20 paragraphs and 40 pages of exhibits, including articles and blogs discussing the use of the terms "uppity" and "arrogant" as a "racial insult" (SAC ¶¶ 361-80; Exs. R-Z, ECF No. 15-3), Plaintiff's "perception," of the meaning of those words is not

evidence of discrimination. _Brodt_, 4 F. Supp. 3d at 568. Moreover, the Court declines Plaintiff's implicit invitation to substitute "uppity" -- which Plaintiff contends is a racially disparaging term -- for the District's use of the word "arrogant" in its NYSDHR Response.  (SAC ¶¶ 361-62.)  Read in context, at most, the singular use of the arguably poorly chosen word "arrogant" suggests reverse-elitism, not racism, _to wit_:

> [Plaintiff] has exhibited a history and pattern of asserting claims, such as those in the instant complaint against Brentwood in multiple forums including with this agency. In those complaints, [Plaintiff] has alleged that he was discriminated against based upon his race when he was not considered for two Elementary Principal positions. The Respondent respectfully submits that the instant complaint is piece and parcel of [Plaintiff's] well-established history of making frivolous allegations and complaints.
> As with his countless other complaints and claims, this Complaint is largely based on [Plaintiff's] grand impression of himself and is riddled with obvious examples of his arrogance and his distasteful opinion that his Harvard degree entitles him to any and every position he desires.  This is obviously not true.  A candidate could have numerous Ivy League degrees and still not be the best candidate for a position for any number of reasons.

(NYSDHR Response at 3 (emphases added).)  As likely, the District's counsel was inartfully expressing its frustration with Plaintiff's history of litigation against its client. At bottom, though, there is nothing to impute this after-the-facts comment to the District, whose actions and inactions are the basis for Plaintiff's claims.

27

In sum, without more, the "arrogance" remark is wholly insufficient to plausibly allege Defendants acted with racial discrimination. See, e.g., Garcia v. Barclays Capital, Inc., 281 F. Supp. 3d 365, 376 (S.D.N.Y. 2017) (delineating factors a court should consider in determining whether a statement evidences discriminatory intent, including: "(1) who made the remark, i.e., a decision-maker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, i.e., whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, i.e., whether it was related to the decision-making process" (citations omitted)).   Hence, the Court rejects Plaintiff's reliance on same to plausibly allege discriminatory intent.

Finally, and significantly, contrary to Mr. Watson, Plaintiff was not recommended for the Principal Position by the exiting District administrator. In fact, Plaintiff's SAC alleges Mr. Watson was preselected for an interview, and ultimately selected for the Principal Position "solely because of the recommendation of" Mr. Larson.   (SAC ¶ 537).   Yet, giving preference to a recommended candidate, without more, is insufficient to raise an inference of discrimination, see Bailey v. N.Y.C. Dep't of Transp., No. 93-CV-1121, 1997 WL 26290, at *7 (S.D.N.Y. Jan. 22, 1997), especially where, as here, there are no

28

factual allegations demonstrating that such preference was based upon race.  "While [the Court] must ensure that employers do not act in a discriminatory fashion, [it] do[es] not sit as a super-personnel department that reexamines an entity's business decisions."  Delaney v. Bank of Am. Corp., 766 F.3d 163, 169 (2d Cir. 2014) (internal quotation marks omitted).

Thus, failing to plausibly allege the existence of a similarly situated comparator to support even a minimal inference of discriminatory intent, Plaintiff's prima facie discrimination claims based upon disparate treatment fail.

   b.  Disparate Impact

Disparate impact claims under Title VII "are concerned with whether employment policies or practices that are neutral on their face and were not intended to discriminate have nevertheless had a disparate effect on [a] protected group."  Reynolds v. Barrett, 685 F.3d 193, 201 (2d Cir. 2012) (quoting Robinson v. Metro-N. Commuter R.R., 267 F.3d 147, 160 (2d Cir. 2001)).[15]  Under this theory of liability, a plaintiff need not offer proof of

---

[15]  "[E]qual protection claims under [Section] 1983 [or Section 1985] cannot be based solely on the disparate impact of a facially neutral policy."  Reynolds, 685 F.3d at 201; Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir. 2004) ("[A] plaintiff pursuing a claimed . . . denial of equal protection under § 1983 must show that the discrimination was intentional.").  Therefore, because Plaintiff has failed to plausibly allege Defendants intentionally discriminated against him, he cannot proceed under a disparate impact theory with regard to his Section 1981, Section 1983, or Section 1985 claims.

discriminatory motive to make out a prima facie case.  See, e.g., Griggs v. Duke Power Co., 401 U.S. 424, 430-32 (1971).  Instead, a plaintiff must isolate and identify a particular employment practice that is the cause of the disparity and provide evidence sufficient to raise an inference of causation.  See Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 994-95 (1988).  To make a prima facie showing of disparate impact, a plaintiff must: "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two."  Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 151 (2d Cir. 2012) (quotation marks and citations omitted).

"[P]roof of a disparity can be demonstrated through statistical analysis which compares the impact of a particular employment action on a protected class with the impact upon qualified employees in the relevant labor pool."  Duncan v. N.Y.C. Transit Auth., 127 F. Supp. 2d 354, 360 (E.D.N.Y. 2001), aff'd, 45 F. App'x 14 (2d Cir. 2002).  At the prima facie stage, statistical analysis put forth to support the existence of a disparity must demonstrate "that the disparity is substantial or significant, and must be of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity."  Chin, 685 F.3d at 151 (internal quotation marks and citation omitted); Mandala v. NTT Data, Inc., 975 F. 3d 202, 209-210 (2d Cir. 2020) (instructing that, while the "standard is relaxed at

the pleading stage, . . . the statistics must plausibly suggest that the challenged practice <u>actually</u> has a disparate impact") (emphasis in original).

Here, Plaintiff alleges the Interview Procedures policy, which allows an SAA-member "word-of-mouth" recommendation of a candidate, has disproportionately discriminated against the black race. (SAC ¶¶ 598-611.) Specifically, Plaintiff claims that, as of the filing date of this action, the SAA had no African American members, thereby effectively resulting in the District not hiring any African American administrators. (<u>Id.</u> ¶¶ 603-04.) Conversely, in moving to dismiss, Defendants argue: (1) nothing in the Interview Procedures policy itself results in African American candidates being excluded from the hiring process; and (2) simply alleging the District has a smaller proportion of black employees than in the population as a whole is insufficient to establish a <u>prima facie</u> disparate impact claim.[16]   (Support Memo at 21-22.)

The Court agrees with Defendants and finds Plaintiff has not sufficiently alleged the requisite causal relationship between the District's SAA-member/candidate-recommendation policy and the alleged disparity in the number of African American administrators in the District.   More specifically, Plaintiff fails to plausibly

---

[16] Defendants also contend that the "Interviewing Procedures for SAA Members" is not a policy.  (<u>Id.</u>)  However, for purposes of the instant motion, the Court need not resolve this issue.

allege a causal relationship between Mr. Larson's recommendation of Mr. Watson for the Principal Position and the District's decision not to offer Plaintiff a screening interview.

Although Plaintiff offers statistical data demonstrating a difference between the types of positions held by the District's black and white employees, as well as the disproportionality of employment between the black and white races (see SAC ¶¶ 255-74), wholly lacking from Plaintiff's SAC are, e.g., any allegations regarding the number of eligible candidates for each position, the number of openings at each level, or the racial composition of the qualified labor pool. "Without more, [Plaintiff's] allegations are insufficient to permit the court to infer a causal connection" between the ability of SAA members to recommend candidates for open positions and the alleged disparity in the District's employment of African Americans and non-African Americans. Syeed v. Bloomberg L.P., 568 F. Supp. 3d 314 (S.D.N.Y. Oct. 25, 2021) ("Even under the liberalized standard applicable to the NYSHRL claims,[17] a plaintiff must allege more than that their employer had discretion in hiring and that the current distribution of employees' gender does not match the assumed gender distribution

---

[17] "The standard for disparate impact claims under Title VII also applies to disparate impact claims under the NYSHRL." Assistant Deputy Wardens/Deputy Wardens Ass'n v. City of N.Y., No. 14-CV-4308, 2019 WL 4015119, at *1 n.1 (E.D.N.Y. Aug. 26, 2019) (citing Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 715 (2d Cir. 1996)).

in the U.S. population."); see also Brown v. Coach Stores, Inc., 163 F.3d 706, 712 (2d Cir. 1998) (explaining "[a]llegations which contend only that there is a bottom line racial imbalance in the work force are insufficient" to state a disparate impact claim); Toussaint v. City of N.Y., No. 19-CV-1239, 2021 WL 4429316, at *9 (S.D.N.Y. Sept. 27, 2021) (finding allegations of disparate impact under the NYSHRL insufficient where no showing was made connecting the specific policies to the statistics).  In the first instance, Plaintiff must provide some allegations regarding the relative number of black and white candidates eligible to be hired as administrators.  Yet, because Plaintiff's conclusory allegations fail to show the requisite causal link between the District's SAA-member/candidate-recommendation policy or practice and Plaintiff not receiving an interview for the Principal Position, he fails to plausibly state a claim based upon disparate impact.

Accordingly, finding Plaintiff's SAC fails to plausibly allege prima facie discrimination claims pursuant to Title VII and Section 1983, those claims are DISMISSED pursuant to Rule 12(b)(6).

### 2. To the Extent Applicable, Plaintiff Also Fails to Plausibly Plead Personal Involvement

As to his Section 1983 claims,[18] in addition to failing to plausibly allege a prima facie claim of discrimination,

---

[18]  As Defendants observe and state:

Plaintiff also fails to adequately allege the requisite personal involvement of each individual Defendant in his SAC.  (See SAC ¶¶ 65, 66, 67.)  Yet, it is well-settled Second Circuit law that to establish a plausible claim for individual liability under Section 1983, a plaintiff must plead the personal involvement of each defendant in the alleged constitutional deprivation.  See Patterson v. County of Oneida, 375 F.3d 206, 209 (2d Cir. 2004).  One is not liable for damages for constitutional violations "merely because he held a high position of authority."  Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).

> [I]f the individual defendant holds a "supervisory position," he may be held liable under Section 1983 if he (1) "failed to remedy the wrong" "after learning of the violation through a report or appeal," (2) "created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue," or (3) was "grossly negligent in managing subordinates who caused the unlawful condition or event."

---

> [P]laintiff seems to acknowledge that there can be no individual liability under Title VII as he pleads such causes of action only against the Board [of Ed.] and the District. However, to the extent the SAC is construed as asserting Title VII claims against the individual defendants, all such claims must be dismissed as a matter of law because Title VII does not provide for individual liability.

(Support Memo at 14 (citing Schiano v. Quality Payroll Sys., 445 F.3d 597, 608 (2d Cir. 2006)).)  The Court agrees and concurs.

34

Edwards v. Jericho Union Free Sch. Dist., 904 F. Supp. 2d 294, 308 (E.D.N.Y. 2012) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)); see also Tekula v. Bayport-Blue Point Sch. Dist., 295 F. Supp. 2d 224, 233 (E.D.N.Y. 2003). A bald allegation that a defendant served as a superintendent is insufficient to allege personal involvement; instead, one needs to include plausible factual allegations detailing the defendant's role in the alleged discrimination against plaintiff. See Edwards, 904 F. Supp. 2d at 309. Similarly, merely serving as a member on a committee that made an allegedly discriminatory hiring decision does not render a board member personally responsible or liable for that decision; again, to survive a dismissal motion, a plaintiff must plausibly allege facts regarding the personal actions of each board member. See, e.g., Harry v. McDonald, No. 3:21-CV-1355, 2022 WL 3576676, at *4 (D. Conn. Aug. 19, 2022) (dismissing Section 1983 action where "there [we]re no allegations of any personal, individual actions taken by any individual defendant").

Here, of the 27 individual Defendants, as to 23 of them Plaintiff has not alleged facts plausibly establishing their personal involvement in the non-selection of Plaintiff and selection of Watson. First, as to Larson: The Court agrees with Defendants that "[t]here are no factual specifics suggesting this recommendation was racially motivated or had anything to do with the plaintiff or his application." (Support Memo at 17; compare

35

SAC ¶¶ 90-91.).   Any purported racial animus connecting Larson's recommendation of Watson with Plaintiff's non-selection is purely speculative, which does not satisfy the plausibility standard. Second, as to Watson:  Again, Defendants are correct that "Watson simply applying for a job he desired is clearly not personal involvement in [Plaintiff's claimed] violation."  (Id.)  Without more, there is no causal connection between Watson's being selected for interviews -- and, ultimately, being hired for the Principal Position – and Plaintiff's non-selection.  Third, as to certain members of the second-round interview committee, to wit, Purga, DeLorenzo, Perlongo, Onesto, Nicosia, Kmiotek, Karson, and Borruso:  A careful review of Plaintiff's allegations regarding these individuals shows they are conclusory.  Moreover, Purga, a parent-volunteer, is not a state actor.  Importantly, there are no allegations linking these second-round interviewers to Plaintiff's non-selection for an initial interview, which is the crux of the alleged discriminatory action.  Fourth, as to the named Board of Ed. members: (1) Isernia, Pitkewicz, and Reynolds could not have had any personal involvement in the alleged discriminatory non-selection decision regarding Plaintiff because they were not Board members until almost a year after Plaintiff's non-selection for and Watson's appointment to the Principal Position, which Plaintiff acknowledges (see SAC ¶ 66); and (2) while Plaintiff alleges Piccirillo, Scavo, Baumann, Kiernan, Wottawa, Slattery,

Coggin, Volpe, and Mancaruso were Board members when Plaintiff was not selected to interview for the Principal Position (while Watson was), his allegations are conclusory, lacking factual allegations demonstrating any plausible individual involvement by these Board members in the candidacy selection and interviewing processes of which Plaintiff complains.  <u>Fifth</u> and finally, as to the Superintendents, Plaintiff's own allegations assert Pelletieri was not appointed until September 30, 2020 (SAC ¶ 65), the day Watson's name was advanced to the Board of Ed. for its consideration and approval; therefore, it is implausible Pelletieri played any role in Plaintiff's non-selection to interview for the Principal Position.  And, regarding the other Superintendents, <u>i.e.</u>, Capel-Eden, Hynes, Trombetta, and O'Keefe, while Plaintiff's allegations sufficiently allege their personal involvement in Plaintiff's non-selection to interview for the Principal Position, because, for the reasons stated herein, Plaintiff does not plausibly allege <u>prima facie</u> claims of racial discrimination, such personal involvement by these Superintendent is not enough to survive Defendants' dismissal challenge.

B.  <u>Plaintiff's Section 1985 Conspiracy Claim</u>

To state a cause of action under § 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the

> conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.

Thomas v. City of N.Y., No. 12-CV-5061, 2013 WL 3810217, at *5 (E.D.N.Y. July 23, 2013) (internal quotation marks and citation omitted). Further, the conspiracy must be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus." Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007). In other words, "the intended victims must be victims not because of any personal malice the conspirators have toward them, but because of their membership in or affiliation with a particular class." United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 850 (1983).

Plaintiff's SAC fails to plead a Section 1985(3) claim for three reasons. First, because Plaintiff fails to plead a violation of any constitutional right, as discussed supra, his claim for conspiracy must be dismissed. See Hartley v. Nassau Health Care Corp., No. 10-CV-3884, 2013 WL 3364375, at *8 (E.D.N.Y. July 3, 2013) ("Plaintiff has failed to allege the violation of any constitutional right, and therefore her section 1985(3) [claim] must be dismissed"); Nasca v. County of Suffolk, No. 05-CV-1717, 2008 WL 53247, at *8 n.8 (E.D.N.Y. Jan. 2, 2008) ("Plaintiff's conspiracy claim under 42 U.S.C. § 1985 must also

fail because there is no underlying Section 1983 violation.")
(collecting cases).

Second, to properly allege a Section 1985 conspiracy, a
plaintiff must "provide some factual basis supporting a meeting of
the minds, such that defendants entered into an agreement, express
or tacit, to achieve the unlawful end." Webb v. Goord, 340 F.3d
105, 110 (2d Cir. 2003) (citation omitted). Vague and conclusory
allegations that defendants have engaged in a conspiracy must be
dismissed. Id. at 111; see Hartley, 2013 WL 3364375 at *8. Here,
the SAC contains no plausible facts suggesting Defendants entered
into an unlawful agreement to deprive Plaintiff of his
constitutional rights. Plaintiff baldly alleges "Larson conspired
with Watson to achieve Watson's appointment as the Hiawatha
[P]rincipal." (SAC ¶ 786.) He also alleges Mr. Larson conspired
with Capel-Eden to provide Mr. Watson a screening interview, and
then the first-round interviewing committee members conspired to
move Mr. Watson's candidacy forward even though they knew Mr.
Watson lacked elementary-level experience. (Id. ¶¶ 787-88.) Such
conclusory and vague allegations are insufficient to allege a
"meeting of the minds." Webb, 340 F.3d at 111;[19] see also Sanders

---

[19] Notably, in his Opposition, Plaintiff admits the deficiencies
of his allegations of conspiracy, due to his "lack of knowledge of
how to present [such allegations]" and, therefore, implicitly
requests leave to amend his SAC. (Opp'n at 45; see infra at 44-48
(discussing leave to amend).)

v. Sheppard, No. 16-CV-6526, 2019 WL 13405420, at *7 (E.D.N.Y. Sept. 30, 2019) ("The bare allegation that defendants 'coordinated' or 'all were aware' is simply another variation of the conclusion that there was a conspiracy; [plaintiff] alleges no actual facts suggesting that a meeting of the minds occurred." (citing Springs v. City of N.Y., No. 17-CV-0451, 2019 WL 1429567, at *7 (S.D.N.Y. Mar. 29, 2019))).

Finally, Plaintiff failed to respond to Defendants' argument that his conspiracy claim is barred by the intra-corporate conspiracy doctrine. (See Support Memo at 22; Reply at 9.) Such failure, by itself, is enough for the Court to dismiss his conspiracy claim. See Palmer v. City of N.Y., 564 F. Supp. 3d 221, 238 (E.D.N.Y. 2021) ("A federal court may deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in opposition papers the defendant's arguments for dismissal." (collecting cases)); Spinnato v. Unity of Omaha Life Ins. Co., 322 F. Supp. 3d 377, 405 (E.D.N.Y. 2018) (same) (collecting cases). However, alternatively, on the merits, Defendants are correct that Plaintiff's conspiracy claim fails as barred under the intra-corporate conspiracy doctrine. Said doctrine prohibits a conspiracy claim against employees of the same entity acting within the scope of their employment, because they are considered a single entity and, therefore, are legally incapable of conspiring with each other. See Varricchio v. County

40

of Nassau, 702 F. Supp. 2d 40, 62 (E.D.N.Y.2010); see also Guity v. Uniondale Union Free Sch. Dist., No. 15-CV-5693, 2017 WL 9485647, at *28 (E.D.N.Y. Feb. 23, 2017) (stating "here all alleged co-conspirators are employed by the same municipal entity, the intra-corporate conspiracy doctrine precludes a conspiracy claim" and recommending plaintiff's conspiracy claim brought against board of education, district superintendent, district assistant superintendent, and district high school principal be barred by intra-corporate conspiracy doctrine), report and recommendation adopted, No. 15-CV-5693, 2017 WL 1233846 (E.D.N.Y. Mar. 31, 2017). The only exception to the application of this doctrine is where the "plaintiff adequately alleges that each defendant possessed an independent, personal conspiratorial purpose, wholly separate and apart from the entity." Broich v. Inc. Vill. of Southampton, 650 F. Supp. 2d 234, 247 (E.D.N.Y. 2009) (emphasis added).

In the instant action, the individual Defendants involved in the Principal Position interview process were employees of a single municipal entity;[20] further, there are no

---

[20]   The Court acknowledges that individual Defendant Purga was a parent-volunteer within the District.  (See SAC ¶ 67.)  The Court presumes Purga would not have been invited to be a member of the second-round interview committee, but-for the fact that her child was a District student.  Thus, the Court further presumes Purga's interests sufficiently aligned with those of the District on the issue of hiring a principal for Hiawatha, and, therefore, for purposes of the instant analysis will deem Purga's status to be equivalent to an unpaid employee of the District.

allegations any of these individuals were acting as separate and distinct entities in carrying out a purported conspiracy to discriminate against Plaintiff. See Guity 2017 WL 9485647, at *28 (finding intra-corporate conspiracy doctrine required dismissal of plaintiff's conspiracy claim where "plaintiff d[id] not allege that the Village Board trustees, mayor, former and current chief of police, or any other Village entity, were effectively acting as separate entities in carrying out the alleged conspiracy to terminate plaintiff's employment" (citing Broich, 650 F. Supp. 2d at 247)); K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 210 (S.D.N.Y. 2013) ("Plaintiffs' conspiracy claims also fail because the alleged conspirators are members of the same public entity, i.e., the [School District]."). Therefore, because the individual Defendants were all members of the same public entity and there are no allegations these Defendants were effectively acting as separate entities in carrying out the alleged conspiracy of preventing Plaintiff from being interviewed for the Principal Position, Plaintiff fails to allege a viable Section 1985(3) conspiracy claim.

In sum, based upon the SAC, and in conjunction with Plaintiff's failure to oppose Defendants' invocation of the intra-corporate conspiracy doctrine, dismissal of Plaintiff's Section 1985(3) claim is warranted.

C.   Municipal Liability

It is well-established that "a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  To maintain a municipal liability claim, a plaintiff must allege "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (internal quotation marks omitted); see also Frost v. N.Y.C. Police Dep't, 980 F.3d 231, 257 (2d Cir. 2020) ("To establish liability under Monell, a plaintiff must show that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom." (citation omitted).

Plaintiff asserts municipal liability claims against the District and the Board of Ed.  (SAC ¶¶ 750-68.)  However, since it has found Plaintiff fails to allege any constitutional violations, the Court need not engage in an analysis concerning whether alleged constitutional violations arose out of a governmental custom, policy or practice.[21]  See Bennett v. Dutchess County, 832 F. App'x

---

[21]   To the extent Plaintiff intended to assert a due process violation (see SAC ¶¶ 745, 747), that claim fails, as well.  To establish a substantive and procedural due process claim, Plaintiff must first demonstrate he had a constitutionally protected property right.  See Stewart v. Naples, 308 F. App'x 526 (2d Cir. 2009) (citing Zahra v. Town of Southold, 48 F.3d 674, 680 (2d Cir. 1995)).  "Ordinarily, there is no constitutionally protected property interest in prospective government employment,"

58, 61 (2d Cir. 2020) ("[W]ithout an underlying constitutional violation, [the plaintiff's] Monell claim . . . likewise fails.") (citing Segal v. City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006)); Hirsch v. New York, 751 F. App'x 111, 116 (2d Cir. 2018) ("Because the district court properly found no underlying constitutional violation, its decision to not address the municipal defendants' liability under Monell was entirely correct."). Accordingly, Plaintiff's municipal liability claims are DISMISSED.

IV.  Leave to Amend

        The Second Circuit has held that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. County of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Yet, "leave to amend need not be granted if the amendment would be futile." Callahan v. Human Resources, No. 3:20-CV-1881, 2022 WL 16797318, at *4 (D. Conn. Nov. 8, 2022) (citing In re Trib. Co. Fraudulent Conv. Litig., 10 F.4th 147, 175 (2d Cir. 2021); see also Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001) (instructing a motion to amend should be granted unless there is

---

and a job applicant therefore has no property interest in the position for which she applies. Abramson v. Pataki, 278 F.3d 93, 100 (2d Cir. 2002); Almontaser v. N.Y.C. Dep't of Educ., No. 07-CV-10444, 2009 WL 2762699, at *4 (S.D.N.Y. Sept. 1, 2009). Accordingly, because Plaintiff had no property interest in the Hiawatha Principal Position, he cannot state a due process claim.

evidence of undue delay, bad faith, undue prejudice, or futility).
"And[,] as the Second Circuit has recently explained, 'a plaintiff
need not be given leave to amend if he fails to specify . . . to
the district court . . . how [an] amendment would cure the pleading
deficiencies in his complaint.'" Id. (quoting Melendez v. Sirius
XM Radio, Inc., 50 F.4th 294, 309 (2d Cir. 2022)).

Plaintiff does not formally request permission to file
another amended complaint, but in responding to Defendants'
arguments for the dismissal of his conspiracy cause of action,
simply states: "In any future amended complaint, the Plaintiff
will be sure to allege the involvement of individual conspirators
to the fullest extent of his evidence, information[,] and belief."
(Opp'n. at 45.)  Defendants oppose any further granting Plaintiff
permission to amend his complaint. (Reply at 11.)  They initially
argue Plaintiff: has not properly moved to amend; failed to provide
a proposed amended complaint for the Court's consideration; and
has not explained potential further amendments. (Id.)
Additionally, Defendants assert amending would be futile "as there
are no facts [Plaintiff] could legitimately allege that would
render the causes of action plausible" especially since "[he] has
already amended the Complaint twice, neither time curing the
defects." (Id.)  Moreover, Defendants contend they will be
prejudiced if Plaintiff is allowed to amend the SAC again since
they "have expended significant resources and time attacking the

deficiencies of the [P]laintiff's pleadings, both through the instant motion and in [the State Litigations], as well as the earlier administrative proceedings." (Id. at 12.) In his Sur-Reply, Plaintiff did not address Defendants' arguments against amending. (See Sur-Reply, in toto.)

In Callahan, a case bearing some striking resemblance to the instant one as it involved a pro se plaintiff who brought several similar lawsuits alleging various discrimination claims against a municipality for its failure to hire her for several jobs, the Court observed plaintiff's "motion for leave to amend [wa]s not accompanied by any proposed third amended complaint" and "[o]ther than recycling the same allegations that appear in prior complaints, [plaintiff]'s motion d[id] not intelligibly allege any further facts that would salvage any of her claims;" therefore, the motion to amend was denied. 2022 WL 16797318, at *4. The same result is warranted here.

Plaintiff has not moved to amend; rather, in passing, in acknowledging the deficiencies in his conspiracy-cause-of-action pleadings, Plaintiff generally states, "[i]n any future amended complaint," he "will be sure to allege the involvement of individual conspirators to the fullest extent of his evidence, information[,] and belief." (Opp'n at 45.) Based solely upon his pro se status, the Court construes this as another request to amend the operative Complaint. However, "[t]o satisfy the requirement

46

of particularly in a motion to amend a pleading, the proposed amended pleading must accompany the motion so that both the Court and opposing parties can understand the exact changes sought." Curry v. Campbell, No. 06-CV-2841, 2012 WL 1004894, at *7 (E.D.N.Y. Mar. 23, 2012) (internal quotation marks and citation omitted). Indeed, in denying a motion to amend, this Court has previously stated: "[N]umerous courts have held that a bare request to amend a pleading contained in a brief, which does not also attach the proposed amended pleading, is improper under Fed. R. Civ. P. 15." Krevat v. Burgers To Go, Inc., No. 13-CV-6258, 2015 WL 1412707, at *5 (E.D.N.Y. Mar. 23, 2015) (quoting Garnett-Bishop v. N.Y. Cmty. Bancorp, Inc., No. 12-CV-2285, 2014 WL 5822628, at *5 (E.D.N.Y. Nov. 6, 2014) (internal quotation marks and citations omitted) (collecting cases).   In any event, granting Plaintiff a third opportunity to amend his Complaint would be futile.  As Defendants aptly state, Plaintiff: "has already amended the Complaint twice, neither time curing the defects"; "was placed on notice of the defects in his discrimination claims through motions to dismiss in the two [State Litigations] and the [D]efendants' pre-motion letter in this matter"; and "has not cured any such defects or deficiencies even despite having gathered a wealth of information and documents from the [D]efendants through the administrative complaint proceedings and FOIL requests."  (Reply at 11.)  The

Court agrees and, in its discretion, denies Plaintiff's deemed amendment request.

***

Because it dismisses all of Plaintiff's claims for failure to state a claim, the Court declines to address Defendants' remaining arguments in support of dismissal.[22]  Further, to the extent not explicitly stated herein, the Court has considered the balance of Plaintiff's arguments in opposition to the Dismissal Motion and find them to be without merit.

CONCLUSION

Accordingly, for the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Dismissal Motion (ECF No. 30) is

---

[22] Nevertheless, the Court notes Defendants have made a persuasive argument that, if not abstention, at least a discretionary stay pursuant to the Colorado River doctrine would be warranted in this case.  (See Support Memo at 24-27 (arguing, inter alia, that a stay "pending resolution of the pending State Litigations would promote judicial economy and avoid duplicative or piecem[ea]l litigations")); compare Lafont v. Phillip, No. 21-CV-3739, 2022 WL 2132992 (E.D.N.Y. June 14, 2022) (after examining Colorado River factors, denying motion to abstain and dismiss action pursuant to Colorado River doctrine, but issuing discretionary stay of federal action pending resolution of the parallel state court action after finding "interests of comity and judicial economy," as well as the consideration that "adequate relief is available in State Court," weigh in favor of such approach).  Further, it is likely this action would be subject to res judicata and/or collateral estoppel defenses.  (See, e.g., Support Memo at 25); see also, e.g., Trivedi v. Gen. Elec. Co., No. 23-254-CV, 2024 WL 3286663, at *1-2 (2d Cir. July 3, 2024) (holding court properly applied res judicata to bar subsequent action as to certain defendants previously sued in court of competent jurisdiction that entered final judgment on the merits as to those defendants; affirming court's sua sponte dismissal of subsequent action against those same defendants).

**GRANTED**; the Second Amended Complaint is DISMISSED without prejudice.  Judgment shall enter in favor of Defendants.

        **IT IS FURTHER ORDERED** that the Clerk of the Court is directed to mail a copy of this Memorandum and Order and the Judgment to the pro se Plaintiff.

                          **SO ORDERED.**

                          /s/ JOANNA SEYBERT
                          Joanna Seybert, U.S.D.J.

Dated:    July 8, 2024
             Central Islip, New York